**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

KIRK T.,

                                        Plaintiff,

            v.                                                    5:21-CV-292
                                                                  (CFH)
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

**APPEARANCES:**                          **OF COUNSEL:**

Collins & Hasseler, PLLC                  VICTORIA H. COLLINS, ESQ.
225 State Street
Carthage, New York 13601
Attorney for plaintiff

Social Security Administration            JAMES J. NAGELBERG, ESQ.
625 JFK Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION & ORDER[1]

        Plaintiff Kirk T.[2] brings this action pursuant to 42 U.S.C. § 405(g) seeking review

of a decision by the Commissioner of Social Security ("Commissioner" or "defendant")

_____

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 4.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision & Order will identify plaintiff by first name and last initial.

denying his application for disability insurance benefits.  Dkt. No. 1.  Plaintiff moves for a finding of disability, and the Commissioner cross moves for a judgment on the pleadings.  Dkt. Nos. 11, 17.  For the reasons set forth below, plaintiff's motion is denied and the Commissioner's motion is granted.

## I.      Background[3]

### A.  Factual Background

Plaintiff was born on October 18, 1971.  T. at 174.  He is a high school graduate, who served twenty years in the military as an ammunition specialist and wheeled vehicle mechanic.  Id. at 48-49, 174.  After his retirement from the military, plaintiff's employment history includes positions as a delivery driver for a soft drink company and a propane supplier, a customer service representative for a wireless telephone company, and glass cutter for a framing company.  Id.  at 49-51, 189-190.

Plaintiff suffered a right ankle injury in 2003 that has required two reconstructive surgeries and still causes lingering pain.  Id. at 790, 843-845.  He also experiences pain in his lower back that radiates down his right hamstring.  Id. at 1084.  He reported that the back pain is worse in the morning but alleviated somewhat with movement, and the leg pain is made worse when sitting for extended periods, such as driving.  Id.  In 2008, plaintiff was diagnosed with mild neurocognitive disorder due to a trauma brain injury,

---

[3] References to the administrative transcript will be cited as "T." and page citations will be to the page numbers in the bottom right-hand corner of the administrative transcript.  All other citations to documents will be to the pagination generated by the Court's electronic filing system, CM/ECF, and will reference the page numbers at the documents' header, and not the pagination of the original documents.

major depressive disorder, and post-traumatic stress disorder, stemming from his combat experience while serving in Iraq. Id. at 276-283.

Plaintiff testified that he left each of his prior jobs due to complications from his physical and mental impairments. T. at 50-54. His back and foot pain prevented him from being able to perform the lifting, carrying, and walking requirements of his delivery positions. Id. at 50-52. He also testified that his PTSD symptoms became worse over time, and this presented difficulties when dealing with other people both in person and over the phone. Id. at 52-54. He found these difficulties to be particularly enhanced in the customer service position, where the job frequently involved listening to customer complaints. Id. at 50.

## B. Procedural Background

On October 18, 2019, plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of November 2, 2018. T. at 21, 174-175. His application was initially denied on November 22, 2019, and plaintiff's request for reconsideration was denied on January 7, 2020. Id. at 73-111, 113-116. Plaintiff's February 19, 2020 request for a hearing was granted. Id. at 117-135. Plaintiff appeared at his July 28, 2020, telephonic hearing with counsel and testified before Administrative Law Judge ("ALJ") Jennifer Gale Smith. Id. at 44-72. Vocational Expert ("VE") Sharon Mancus also testified. Id. at 63-71.

On August 20, 2020, the ALJ rendered an unfavorable decision and plaintiff administratively appealed. T. at 18-42, 172-173. On January 26, 2021, the Appeals Council denied the request for review. Id. at 5-11. In response to this final decision of the Commissioner, plaintiff timely commenced this action on March 15, 2021. Dkt. No.1.

### C.  The Parties' Arguments

In support of reversal, plaintiff argues that the Commissioner's RFC determination is not supported by substantial evidence.  See Dkt. No. 11.  Specifically, plaintiff contends that the Commissioner committed reversible error by (1) making inconsistent findings regarding plaintiff's ability to adapt to changes in the work environment, (2) improperly substituting her lay judgment regarding plaintiff's physical functional limitations in place of expert medical opinion, and (3) failing to properly resolve an apparent conflict in the VE testimony before reaching the step five determination.  Id. at 12-17.  Conversely, the Commissioner argues that the ALJ's decision was internally consistent and her evaluation of the medical opinion evidence, plaintiff's testimony, VE testimony, and the overall record of plaintiff's treatment history and activities of daily living was supported by substantial evidence.  See Dkt. No. 17.

## II.    Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as

4

adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004)

(citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).

The substantial evidence standard is "a very deferential standard of review . . . .  [This]

means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder

would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443,

448 (2d Cir. 2012) (emphasis in original) (internal quotation marks omitted).  Where

there is reasonable doubt as to whether the Commissioner applied the proper legal

standards, the decision should not be affirmed even though the ultimate conclusion

reached is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F.

Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d

Cir. 1987)).  However, if the correct legal standards were applied and the ALJ's finding

is supported by supported by substantial evidence, such finding must be sustained,

"even where substantial evidence may support the plaintiff's position and despite that

the court's independent analysis of the evidence may differ from the [Commissioner's]."

Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted); Veino v.

Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . .

benefit . . . ." 42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than 12 months." Id. § 423(d)(1)(A).  A medically determinable

impairment is an affliction that is so severe that it renders an individual unable to

continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  Id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

> Finally, if the claimant is unable to perform his [or her] past
> work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  The plaintiff bears the initial burden of proof to

establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1179-

80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth

step, the burden shifts to the Commissioner to prove that the plaintiff is still able to

engage in gainful employment somewhere.  Id. at 1180 (citing Berry, 675 F.2d at 467).

### C.  ALJ's Decision

In her August 20, 2020, decision, the ALJ first determined that plaintiff met the

insured status requirements through December 31, 2023.  T. at 23.  Applying the five-

step disability sequential evaluation, the ALJ next determined that plaintiff had not

engaged in substantial gainful activity since November 2, 2018, the alleged onset date.

Id. at 24.  The ALJ found at step two of the sequential evaluation that plaintiff had "the

following severe impairments: neurocognitive disorder, depressive disorder, anxiety

disorder, post-traumatic stress disorder (PTSD), obesity, lumbar degenerative disc

disease and spondylosis with radiculopathy, peripheral polyneuropathy, and right ankle

avulsion injury with hardware insertion and subsequent removal[.]"  Id. at 24.

At step three, the ALJ determined that plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  T. at 25-27.  Before

reaching step four, the ALJ concluded that plaintiff retained the residual functional

capacity ("RFC") to perform less than the full range of sedentary work.  Id. at 27-34.  At

step four, the ALJ determined that plaintiff is unable to perform his past relevant work.

Id. at 34.  Considering plaintiff's RFC, age, education, and work experience, along with

the VE testimony, the ALJ determined that plaintiff can perform other jobs that exist in significant numbers in the national economy, including document preparer and lens inserter.  Id. at 35.  Therefore, the ALJ determined that plaintiff "has not been under a disability, as defined in the Social Security Act, from June 23, 2018 through the date of this decision."  Id.

### D.  Relevant Medical Opinion Evidence

#### 1.  Dr. A. Saeed and Dr. M. Kirsch

State agency medical consultant A. Saeed, M.D., reviewed plaintiff's then-current medical records on November 21, 2019.  T. at 81-83.  A second state agency medical consultant, M. Kirsch, M.D., reviewed plaintiff's then-current medical records on January 7, 2020, as part of the administrative response to plaintiff's request for reconsideration of her initial denial.  Id. at 98-100.  As both consulting physicians offered similar opinions regarding plaintiff's physical limitations, the Court will discuss them together. Id. at 81-83, 98-100.

Dr. Saeed and Dr. Kirsch opined that plaintiff can occasionally lift and/or carry up to twenty pounds and could frequently lift or carry up to ten pounds.  Id. at 81, 98.  Each also opined that plaintiff could stand and/or walk for a total of six hours during an eight-hour workday.  Id. at 81, 98.  Dr. Saeed and Dr. Kirsch further opined that plaintiff could sit for a total of about six hours during the workday, and had no limitations in his ability to push or pull.  Id. at 81, 98-99.

Each state agency consultant opined that plaintiff could frequently climb ramps or stairs, occasionally climb ladders, ropes, or scaffolds, frequently balance and stoop, and occasionally kneel, crouch, and crawl.  T. at 81-82, 99.  Neither physician found any manipulative, visual, communicative, or environmental limitations.  Id. at 82, 99.

The ALJ considered the opinions of Dr. Saeed and Dr. Kirsch together, and found neither one to be persuasive.  T. 32.  The ALJ noted that the consultant's medical opinions were equivalent to an ability to perform less than the full range of light work, and found them inconsistent with the overall medical evidence that indicated no more than a sedentary work level.  Id.

### 2.  Dr. Monica Kwicklis

Monica Kwicklis, M.D., plaintiff's primary care physician, prepared an opinion regarding plaintiff's physical RFC dated June 15, 2020.  T. at 876-879.  She opined that plaintiff could occasionally lift up to ten pounds, and frequently lift lesser weight.  Id. at 876.  She also opined that plaintiff could stand and/or walk for a total of less than two hours during an eight-hour workday.  Id.  Dr. Kwicklis did not specify a length of time that plaintiff could sit but opined that he must periodically alternate between sitting and standing to relieve pain or discomfort.  Id. at 877.  She further opined that plaintiff was limited in his use of his lower extremities to push or pull, due to back pain and numbness in his feet.  Id.

Dr. Kwicklis opined that plaintiff had extreme postural limitations, and could never climb ramps, stairs, ladders, ropes, or scaffolds, and could never balance, kneel, crouch, crawl, or stoop.  T. at 877.  She also opined that plaintiff had unspecified limitations with regard to reaching in all directions and could only occasionally use his hands for gross or fine manipulation.  Id. at 878.  She found no limitations with regard to seeing, hearing, or speaking, but opined that plaintiff's pain impacted his ability to concentrate.  Id.  In addition, Dr. Kwicklis opined plaintiff's pain imposed environmental

limitations regarding exposure to extreme temperatures, noise, dust, vibration, humidity, workplace hazards, fumes, odors, chemicals, and gases. Id. at 879.

The ALJ found Dr. Kwicklis' opinion to be unpersuasive. T. at 33. She found the description of postural and manipulative limitations to be inconsistent with the overall medical record, due to a lack of evidence of any upper extremity or cervical spine impairment. Id. The ALJ also questioned the basis for some of the environmental limitations in the opinion, as there appeared to be no connection between plaintiff's physical impairments, primarily back and ankle pain, and Dr. Kwicklis' opinion that plaintiff needed to avoid exposure to extreme temperatures, noise, and respiratory irritants. Id.

### 3.  Dr. E. Kamin and Dr. T. Inman-Dundon

State agency psychiatric consultant E. Kamin, Ph.D., reviewed plaintiff's then-current medical records on November 21, 2019. T. at 83-86. State agency psychiatric consultant T. Inman-Dundon, Ph.D., reviewed plaintiff's then-current medical records on January 7, 2020, as part of the administrative response to plaintiff's request for reconsideration of her initial denial. Id. at 100-104. Each consultant offered an opinion regarding plaintiff's mental functional limitations. As with Dr. Saeed and Dr. Kirsch, the two psychiatric consultant opinions are similar; therefore, the Court will discuss them together.

Neither consultant found evidence of limitations in plaintiff's ability to make simple work-related decisions or his ability to understand, remember, and carry out very short and simple instructions. Id. at 84, 101. Both physicians found no significant limitations in plaintiff's ability to understand, remember or carry out detailed instructions.

10

Id. Dr. Kamin and Dr. Inman-Dundon each opined that plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods, and his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. Id.

With regard to social interaction, each consultant opined that plaintiff was moderately limited in his ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. T. at 84-85, 102. With respect to adaptation, Dr. Kamin and Dr. Inman-Dundon each opined that plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting, to travel to unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others. Id. at 85-102.

Citing psychiatric treatment notes, Dr. Kamin opined that plaintiff retained the mental capacity to perform "unskilled work in a low contact setting." T. at 86. Relying on the same notes, Dr. Inman-Dundon opined that plaintiff is "able to perform unskilled work, with infrequent contact with others." Id. at 104. The ALJ considered these similar opinions together, and found them to be "generally persuasive" due to their consistency with the overall medical evidence and the programmatic expertise possessed by each consultant. Id. at 32.

### 4. Michael Thompson[4]

---

[4] The record indicates that Michael Thompson is a clinical psychologist; however, the Court is not certain whether he has a degree as a Psy.D. or Ph.D. See T. at 405.

Clinical psychologist Dr. Thompson performed a psychological evaluation of plaintiff on August 9, 2018.  T. at 398-405.  Dr. Thompson noted that plaintiff was cooperative, with good eye contact and a rational and goal-directed thought process. Id. at 404.  Plaintiff appeared to have "grossly intact" cognitive functioning with average intellectual skills.  Id.  During the examination, Dr. Thompson observed that plaintiff had a mildly anxious mood but an otherwise pleasant and appropriate affect.  Id.

Based on his examination, Dr. Thompson diagnosed plaintiff with PTSD in connection with his military combat experiences.  Id. at 404-405.  The psychologist opined plaintiff's symptoms were "currently moderate" but did result in persistent disruptions in many areas of psychosocial functioning.  Id. at 405.  For example, plaintiff was "persistently hypervigilant" in crowds and "somewhat socially avoidant," with recurring episodes of "mild verbal irritability."  Id.  In Dr. Thompson's opinion, if plaintiff had to work closely with others throughout the workday, plaintiff would be at risk for "at least mild and possibly moderate work related disruptions."  Id.

The ALJ found Dr. Thompson's opinion to be "partially persuasive" because it was consistent with plaintiff's documented difficulties with irritability and difficulties interacting with other people, despite a cooperative demeanor during medical appointments.  T. at 32.  The ALJ discounted the reliability of the opinion due to the psychologist's use of the vague terms "mild" and "moderate" and the absence of "a full function-by function assessment of the claimant's ability to perform mental work-related activities."  Id. at 32-33.

### 5.  Carol Coy, NPP and Dr. Marek Makuch

Carol Coy, NPP and Dr. Marek Makuch provided psychological treatment to plaintiff since January 30, 2019, and issued a July 22, 2020, opinion addressing

plaintiff's mental ability to perform work-related activities.  T. at 1069-1071.  The providers opined that plaintiff had "marked" limitations in his ability to understand, remember, and carry out complex instructions and his ability to make judgments on complex work-related decisions.  Id. at 1069.  They also opined that plaintiff had "moderate" limitations in his ability to understand and remember simple instructions, interact appropriately with the public and coworkers, and respond appropriately to changes in the work setting; and "mild" limitations in his ability to carry out simple instructions and to make judgments on simple work-related decisions.  Id.  The providers indicated that the opinion was based, in part, on plaintiff's reported "history of difficulty in the setting.  Would get irritated and would have to walk away."  Id. at 1070.

The ALJ found the opinion to be "partially persuasive."  T. at 33.  The ALJ found that the medical record reflected certain mental function limitations, but mental status examinations did not reflect the marked limitations described in the opinion.  Id.  The ALJ also noted that the opinion relied in part on plaintiff's self-reported symptoms, which were not fully consistent with his activities of daily living. Id. at 33.

## III.   Legal Analysis

### A.  RFC Determination

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms.  See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. § 404.1545.  "In assessing RFC, the ALJ's findings must specify the functions plaintiff is

capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." Martone, 70 F. Supp. 2d at 150. The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work. See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. § 404.1545. If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform." Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (quoting Cobb v. Comm'r of Soc. Sec., No. 5:13-CV-591 (LEK/TWD), 2014 WL 4437566, *6 (N.D.N.Y. Sept. 9, 2014)) (additional citation omitted). "An ALJ should consider 'all medical opinions received regarding the claimant.'" Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) ); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ is required to articulate consideration of the same factors for evaluating opinions from non-treating medical sources as those for assessing

treating sources; the only exception in which the ALJ is "not required to articulate how [he or she] considered evidence" is from nonmedical sources.  20 C.F.R. § 404.1520c(d).

The regulations define sedentary work as work that

involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are met.

See, e.g., 20 C.F.R. § 404.1567(a).  In determining that plaintiff had the RFC to perform less than the full range of sedentary work, the ALJ found that plaintiff could:

occasionally balance, kneel, crouch, crawl, stoop, and climb ramps and stairs.  He should not work at unprotected heights; climb ladders, ropes or scaffolds; or work in close proximity to dangerous machinery or moving mechanical parts or equipment.  The claimant should work at simple, routine and repetitive tasks in a low stress job defined as having occasional decision-making, occasional judgment required and occasional changes in the work setting.  He should work at goal oriented work rather than production pace rate work.  The claimant should have occasional contact with coworkers and supervisors, and no public contact.

T. at 27-28.

## B.  Evaluation of Medical Opinion Evidence

Under the relevant regulations, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on their supportability and consistency, the author's relationship with the claimant and specialization, and "other factors."  20 C.F.R. § 404.1520c(c).  Although the ALJ is not required to assign a specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  Id. § 404.1520c(a) and (b)(1).  The ALJ must expressly "explain how [he or she] considered the supportability and consistency factors" for all of the medical

opinions in the record.  Id. § 404.1520c(b)(2).  "[S]upportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  Id. § 404.1520c(c)(1).  "[C]onsistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  Id. § 404.1520c(c)(2).

"If the ALJ fails adequately to explain the supportability and consistency factors, or bases [his or] her explanation upon a misreading of the record, remand is required." Rivera v. Comm'r of the Soc. Sec. Admin., No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), report and recommendation adopted, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (citation and quotation marks omitted).  The ALJ is generally "not required to, explain how [he or she] considered the" remaining factors. 20 C.F.R. § 404.1520c(b)(2).  However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported ... and consistent with the record . . . but are not exactly the same," he or she "will articulate how [he or she] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions. . . ."  Id. § 404.1520c(b)(3).

### C.  The Commissioner's RFC Determination and Evaluation of the Medical Opinion Evidence Were Supported by Substantial Evidence.

#### 1.  The ALJ's Findings Regarding Plaintiff's Ability to Adapt to Changes in the Workplace Were Internally Consistent and Supported by Substantial Evidence.

At step three, plaintiff has the burden of showing that he meets the requirements of both the relevant paragraph A and B criteria, or the requirements of paragraph C for a particular Listing.  Relevant to this proceeding, the ALJ considered the mental health listings of 12.02, 12.04, 12.06, and 12.15 as one portion of his step three analysis.  T. at 26.  To meet "paragraph C" criteria for any of these four listings, an individual must present a "medically documented history of the existence of the disorder over a period of at least 2 years," with both "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder," and "[m]arginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.02(C), 12.04(C), 12.06(C), and 12.15(C).

When evaluating the paragraph C criteria for plaintiff's mental impairments, the ALJ stated:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied.  In this case, the evidence fails to establish the presence of the "paragraph C" criteria.  The record reflects no psychiatric emergency department visits, inpatient hospitalizations, nor any significant mental exacerbations since the alleged onset date.  <u>Simply stated, the claimant does not have a minimal capacity to adapt to changes in his environment or demands that are not already part of his daily life.</u>  In making these determinations of the claimant's mental functional limitations, the undersigned has granted appropriate weight to reviewing, treating and examining sources' assessments and/or findings as outlined herein.

T. at 27 (emphasis added).

The Commissioner concedes that the ALJ's wording in the underlined sentence "is not a model of clarity."  Dkt. No. 17 at 4.  Focusing on that awkward wording, plaintiff

contends that the ALJ found that plaintiff lacked even a minimal capacity to adapt to changes in his work environment.  Dkt. No. 11 at 12.  Plaintiff further contends that such finding at step three is inconsistent with or undermines the ALJ's subsequent RFC determination that plaintiff could handle occasional changes in the work setting.  Id.

Plaintiff's contentions are fully rebutted when the troublesome sentence is read in context.  In the remainder of the ALJ's step three analysis, he found that no paragraph C criteria were met due to the lack of any mental health hospitalizations or exacerbations of mental health symptoms during the relevant period.  T. at 26-27. Despite the awkward phrasing, it is clear that the ALJ intended to say that plaintiff possessed more than a minimal capacity to adapt to changes in the work environment, a finding that is consistent with the RFC determination and the record evidence.  To support this finding, the ALJ's decision included review of multiple medical opinions that plaintiff has "mild" to "moderate" limitations in interacting with others, concentrating, persisting or maintaining pace, and adapting or managing oneself.  Id. at 32, 79, 97, 404-405, 1070.  She also referenced longitudinal medical examinations showing a cooperative demeanor and mental health symptoms that were managed by medication and counseling, despite PTSD symptoms that were more pronounced at night.  Id. at 330, 339, 349-350, 362, 366-367, 887, 928, 940.  Additionally, the ALJ concluded that as to the "paragraph B" criteria, plaintiff had "moderate limitations in his ability to adapt or manage himself."  Id. at 27.

Based on those findings, the ALJ had substantial evidence to conclude that plaintiff did not meet the Paragraph C criteria.  See Mary M. v. Comm'r of Soc. Sec., No. 8:20-CV-1594 (TWD), 2022 WL 823850, at *5-6 (N.D.N.Y. March 17, 2022)

(determining that the ALJ's conclusion that the plaintiff's mental health symptoms did not meet the paragraph C criteria was supported by substantial evidence where plaintiff had never required inpatient psychiatric hospitalization or ongoing treatment beyond therapy and medication); Gabriel C. v. Comm'r of Soc. Sec., No. 6:18-CV-671 (ATB), 2019 WL 4466983, at *8 (N.D.N.Y. Sept. 18, 2019) (finding "no reasonable fact finder could have found that plaintiff had marginal adjustment" as examinations showed largely intact functioning, plaintiff had never "been hospitalized for a mental episode," and he could complete daily activities such as attend college classes, drive a vehicle, "prepare simple meals, socialize with a few close friends," and "care for his cat[.]").  This same evidence supported the ALJ's finding that plaintiff could tolerate at least occasional contact with coworkers and supervisors, as set out in the RFC determination.  T. at 28.  The Court thus concludes that there is no inconsistency in the ALJ's discussion of plaintiff's ability to adapt to changes in his work environment, and no grounds for remand in connection with the ALJ's step three analysis.

### 2.  The ALJ's Evaluation of the Medical Opinions and Physical RFC Determination were Supported by Substantial Evidence.

Plaintiff contends that the ALJ improperly substituted her lay opinion regarding plaintiff's physical impairments in place of the expert medical opinions of Dr. Saeed, Dr. Kirsch, and Dr. Kwicklis because she labeled each of these opinions "unpersuasive." Dkt. No. 11 at 13-14.  This Court disagrees and finds that the ALJ appropriately relied upon the longitudinal medical record to calculate plaintiff's RFC, even it did not fully correspond to a particular medical opinion.

In her assessment of plaintiff's physical RFC, the ALJ summarized plaintiff's 2009 and 2017 ankle reconstruction surgeries, along with 2018 physician assessments

that the ankle was healing well but still showed mild to moderate osteoarthritis.  T. at 29, 392, 426, 811, 815-816.  The ALJ also considered more recent records reflecting conservative orthotic treatment for plaintiff's lingering foot pain following his 2019 surgery to removal the "ankle orthopedic hardware."  Id. at 29, 340, 566.

When considering the impairments of plaintiff's lumbar spine, the ALJ reviewed physician-prepared imaging reports of the lumbar spine showing degenerative disc disease and mild lumbar spondylosis, and treatment notes addressing plaintiff's favorable response to pain injections.  Id. at 315, 492.  The most recent treatment notes, dated July 30, 2020, found plaintiff to have full flexion, extension, lateral bending and bilateral rotation despite lingering pain.  Id. at 1084.  The examining physician found that plaintiff's lumbar radiculopathy and back pain were "improving with time and nonoperative management."  Id.

The Second Circuit has recognized that "[t]he ALJ is not permitted to substitute [her] own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion."  Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (citing Burgess v. Astrue, 537 F.3d 117, 131 (2d Cir. 2008)).  However, there is no legal requirement that the ALJ rely on a medical opinion in every case to formulate the RFC; rather, the ALJ has the responsibility of reviewing all the evidence before her, resolving inconsistencies, and making a determination  consistent with the evidence as a whole.  See Bliss v. Colvin, No. 3:13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); Petell v. Comm'r of Soc. Sec., No. 7:12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10

(N.D.N.Y. Mar. 21, 2014) (same); Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002)

("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").  "[I]t

is the province of the ALJ to consider and resolve conflicts in the evidence as long as

the decision rests upon 'adequate findings supported by evidence having rational

probative force.'"  Camarata v. Colvin, No. 6:14-CV-0578, 2015 WL 4598811, at *9

(N.D.N.Y. July 29, 2015) (quoting Galiotti v. Astrue, 266 F. App'x. 66, 67 (2d Cir. 2008)

(summary order)).

Plaintiff's argument is centered on the premise that the ALJ should have based

her RFC determination on Dr. Kwicklis' restrictive opinion.  Dkt. No. 11 at 13-14.

Plaintiff's preference for this opinion is understandable.  VE Mancus testified that there

would be no full time work that plaintiff could perform if the restrictions described by Dr.

Kwicklis, particularly those involving fine manipulation, were in place.  T. at 70-71.

However, the ALJ explained that she found no support in the longitudinal record for Dr.

Kwicklis's treating source opinion that plaintiff had extreme postural and manipulative

restrictions and further concluded that the environmental limitations described by Dr.

Kwicklis did not correspond to any of plaintiff's severe impairments.  Id. at 33, 877-879.

Dr. Kwicklis' opinion did not include any narrative that would support these limitations,

and plaintiff has not identified any supporting treatment notes or other medical records

that were overlooked or misinterpreted by the ALJ.  See generally Dkt. No. 11.  Even if

plaintiff had identified some potential contradictions within the record, that alone would

not entitle plaintiff to remand.  Vincent v. Shalala, 830 F. Supp. 126, 133 (N.D.N.Y.

1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing

Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

This court thus finds that the ALJ's decision included an appropriate evaluation of all available medical opinions from treating and non-treating sources for consistency and supportability with the overall record.  Taking all these records into account, the ALJ marshalled substantial evidence to support her evaluation of the medical opinion evidence and the RFC determination, even if the limitations did not mirror a particular opinion.  See, e.g., Todd E. O. v. Comm'r of Soc. Sec., No. 5:20-CV-1046 (CFH), 2022 WL 326629, at *13-14 (N.D.N.Y. Feb. 3, 2022) (affirming the ALJ's decision where the RFC was supported by substantial evidence despite the ALJ finding each of the relevant medical opinions to be unpersuasive).  In doing so, the ALJ accepted plaintiff's subjective testimony regarding pain with movement, despite medical opinion evidence that plaintiff could perform light work, and issued an RFC determination for less than the full range of sedentary work.[5]  See Lesanti v. Comm'r of Soc. Sec., 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("The fact that the ALJ afforded [the p]laintiff the benefit of the doubt and included [additional functional] limitation[s] in the RFC [] is not grounds for remand.")  Accordingly, plaintiff's challenge to the ALJ's evaluation of the medical opinion evidence and RFC determination does not present any grounds for remand.

### 3.  The ALJ's Step Five Determination Was Supported by Substantial Evidence.

At plaintiff's July 28, 2020, hearing, the ALJ questioned VE Mancus regarding potential jobs that a hypothetical individual with an RFC matching plaintiff's could perform.  T. at 68-70.  The VE testified that an individual with such an RFC could perform the representative jobs of document preparer, lens inserter, or final assembler.

---

[5] The ALJ also stated that her RFC determination gave plaintiff "the benefit of the doubt" regarding his PTSD symptoms, despite limited support in the record.  T. at 34.

T. at 69.  As part of this testimony, the ALJ confirmed that VE Mancus' testimony was generally consistent with the Dictionary of Occupational Titles ("DOT") and the VE's expert knowledge of how those jobs are generally performed.  Id. at 70.

As an initial matter, this Court finds that the hypothetical question posed to the VE accurately reflected the ALJ's RFC determination, which the Court has already found to be supported by substantial evidence for the reasons discussed above. Plaintiff contends that the ALJ still erred at step five by failing to reconcile apparent conflicts between the representative occupations and the RFC.  Dkt. No. 11 at 14-17. Specifically, plaintiff contends that the document preparer position entails a reasoning level of "3," and thus could not be performed by an individual like plaintiff, who is limited to "simple, routine and repetitive tasks in a low stress job defined as having occasional decision-making, occasional judgment required and occasional changes in the work setting."  T. at 28.  Plaintiff also contends that the representative occupation of lens inserter is incompatible with an RFC that limits plaintiff to "goal oriented work rather than production rate work" and precludes working "in close proximity to . . . moving mechanical parts or equipment."  Id.; see Dkt. No. 11 at 14-15.

Plaintiff's challenge to the step five determination fails.[6]  Plaintiff's arguments regarding the level of reasoning required for the document preparer position and the

---

[6] The Commissioner contends that these arguments regarding the VE testimony should be deemed waived, because plaintiff's counsel did not raise them to the ALJ during the administrative hearing.  Dkt. No. 17 at 11-12.  Because this Court has already determined that remand is unwarranted, it declines to resolve the waiver question but notes that plaintiff did challenge the VE testimony before the Appeals Council.  See T. at 271-73; see also Mark E. v. Kijakazi, No. 8:20-CV-425 (FJS), 2021 WL 4168590, at *9 (N.D.N.Y. September 14, 2021) (citations omitted) (collecting cases to support the contention that the Second Circuit had not addressed the issue but that "several district courts in this Circuit have held that '[t]he failure to present an argument [regarding VE testimony] to the ALJ constitutes waiver of the right to raise it on appeal.'"); Plante v. Astrue, No. 06-CV-972 (LEK/VEB), 2009 WL 1951352, at *2 (N.D.N.Y. July 2, 2009) (concluding that plaintiff had not forfeited challenge to VE's qualifications where he raised the issue before the Appeals Council but not the ALJ).

production and pace requirements for the lens inserter positions have been rejected by multiple courts within the Second Circuit.  See, e.g., Kelly D. v. Saul, No. 5:18-CV-1190 (DJS), 2019 WL 6683542, at *5 (N.D.N.Y. December 6, 2019) (citations omitted) (agreeing "with the 'growing number of courts [that] have held that jobs with DOT reasoning levels of two or three are compatible with limitations to simple, routine work[]'" and finding that the ALJ properly concluded that plaintiff could perform work of document preparer); Race v. Comm'r of Soc. Sec., No. 14-CV-1357 (GTS/WBC), 2016 WL 3511779, at *7 (N.D.N.Y. May 24, 2016) (holding that reasoning level of three are not inconsistent with a limitation to short, simple instructions); Tatelman v. Colvin, 296 F. Supp. 3d 608, 613 (W.D.N.Y. 2017) ("[I]t is well-settled that a limitation to unskilled work, such as the . . . lens inserter positions identified by the VE as suitable for someone with plaintiff's RFC, sufficiently accounts for limitations relating to stress and production pace."); see also S.J. v. Comm'r of Soc. Sec., No. 3:20-CV-560 (ATB), 2021 WL 1699916, at *13  (N.D.N.Y. April 29, 2021) (finding individual who was limited to low stress work and occasional decision-making could perform work requirements of lens inserter).

Additionally, one out of circuit case has noted that even where "common sense would seem to dictate" that a job requires "production-rate pace, the DOT description simply does not require that conclusion, particularly where the description specifically provides that the worker '[m]ay stuff toys by hand.'"  Gibson v. Kijakazi, No. 2:20-CV-00559, 2021 WL 5277132, at *3 (S.D.W. Va. Nov. 12, 2021).  Here, the ALJ limited plaintiff to simple, low stress, repetitive, and routine work, and the lens inserter position requires the worker to insert lenses into frames by hand and then place them on the

conveyor belt.  See T. at 28; see also Lens Inserter, DICOT 713.687-026, 1991 WL 679273.  As courts have found that the jobs of document preparer and lens inserter are consistent with an RFC similar to plaintiff's, the Court finds no error.

However, plaintiff also challenges the ALJ's determination related to the lens preparer position because the DOT definition requires use of a "conveyor belt that passes under heat lamps which soften frames preparatory to setting of lenses."  Lens Inserter, DICOT, 713.687-026 (G.P.O.), 1991 WL 679273.  Plaintiff states that "a conveyor belt would be a moving mechanical equipment[]" which is prohibited by plaintiff's RFC that states he should not work "in close proximity to . . . moving mechanical parts or equipment."  T. at 28.

Courts outside of this Circuit have found potential merit to plaintiff's argument that the job of lens inserter is incompatible with a restriction on proximity to moving mechanical equipment.  See Cody M. v. Saul, No. 1:19-CV-1181 (JRS/MPB), 2020 WL 1149596, at *3 (S.D. Indiana March 9, 2020) ("[T]he DOT's description that frames are placed on a conveyor belt does appear to contradict the . . . that [the plaintiff] should never be around moving mechanical parts."); Gibson v. Kijakazi, No. 2:20-CV-00559, 2021 WL 5277132, at *2 (S.D.W. Va. Nov. 12, 2021) ("The court agrees that the VE's testimony that a hypothetical individual, who needs to avoid frequent exposure to moving machinery, could perform the nut sorter position is likely inconsistent with the DOT's description of the position[] where the description requires a "conveyor belt" but the DOT definition says that moving mechanical parts are not present).

By contrast, as the Commissioner states, other out of Circuit cases have determined that the use of a conveyor belt is not inconsistent with an RFC limitation in

25

moving mechanical parts where the DOT definition states that moving mechanical parts are not present.  See Dkt. No. 17 at 17; see also Hernandez v. Colvin, No. 14-CV-2110 (JPR), 2016 WL 805252, at *8 (C.D. Cal. Feb. 29, 2016), judgment entered, 2016 WL 797557 (C.D. Cal. Feb. 29, 2016) (citations omitted) ("Although [the p]laintiff implies that work as a hand packager is incompatible with his restriction from working with dangerous machinery, in fact the DOT states that the hazard of '[m]oving [m]echanical [p]arts' is '[n]ot [p]resent' and 'does not exist.'  Thus, no conflict existed between the DOT and the VE's testimony that [the p]laintiff could perform the hand-packager job."); Hardin v. Colvin, No. 6:14-CV-01044 (SB), 2015 WL 7766080, at *9 (D. Or. Nov. 4, 2015), report and recommendation adopted, No. 6:14-CV-1044-SB, 2015 WL 7777889 (D. Or. Dec. 2, 2015) ("Although the bottling line attendant position requires working near a conveyor belt, the job description indicates that moving mechanical parts are not present in this position.  In light of the foregoing, the Court concludes that the VE's testimony did not conflict with the DOT.").  Here too, for the lens inserter position, the DOT states: "Moving Mech. Parts: Not Present - Activity or condition does not exist[.]" Lens Inserter, DICOT 713.687-026, 1991 WL 679273.

No Second Circuit case law has addressed whether the use of a conveyor belt is a moving mechanical part or addressed whether the SSA has included a conveyor belt within its definition of a moving mechanical part.  As there is no Second Circuit case law that concludes that use of a conveyor belt equates to use of moving mechanical parts, the Court finds that substantial evidence supports a conclusion that the lens inserter position is consistent with plaintiff's RFC.  See T. at 28.  However, even if the Court had found otherwise, any such finding would be harmless error as the ALJ identified the

document preparer position as available to plaintiff with 42,000 jobs available nationally.[7]  See T. at 35; see also Camarata v. Colvin, No. 6:14-CV-0578, 2015 WL 4598811, at *16 (N.D.N.Y. July 29, 2015) (denying request for remand because application of the correct legal standard would not change the outcome).  "The Commissioner need show only one job existing in the national economy that [the claimant] can perform[,]" Bavaro v. Astrue, 413 F. App'x. 382, 384 (2d Cir. 2011) (summary order) (citations omitted), and "[c]ourts have held that numbers varying from 9,000 upwards constituted 'significant.'"  Hanson v. Comm'r of Soc. Sec., No. 3:15-CV-0150 (GTS/WBC), 2016 WL 3960486, at *13 (N.D.N.Y. June 29, 2016), report and recommendation adopted, 2016 WL 3951150 (N.D.N.Y. July 20, 2016); cf. Cody M., 2020 WL 1149596, at *3-4 (determining that a job requiring a conveyor belt was inconsistent with an RFC restriction from moving mechanical parts but finding that the error was harmless because the VE identified other available jobs); Gibson, 2021 WL 5277132, at *3 (same).  Here, as the ALJ identified at least one job that exists in significant numbers in the national economy that plaintiff could perform, remand is not warranted.  See, e.g., Peter B. v. Kijakazi, No. 3:20-CV-00966 (TOF), 2022 WL 951689, at *12 (D. Conn. March 30, 2022) ("Even if one disregards the 'janitor' and 'order picker' figures, the VE's testimony about the number of dishwasher jobs provides substantial evidentiary support for the ALJ's conclusion that 'there would be a significant number of jobs in the national economy that the claimant could perform.'").

---

[7] The VE also testified that a third job was available in the national economy: final assembler (15,000 jobs nationally).  See T. at 69.

## IV.   Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that plaintiff's motion (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated:   July 14, 2022
         Albany, New York

Christian F. Hummel
U.S. Magistrate Judge